Case number 25-5119 James F. Murphy Appellant v. Daniel Driscoll, the Honorable, in his official capacity as Secretary of the Army. Mr. Thayer for the Appellant, Mr. Tracy for the Appellee. Good morning, counsel. Mr. Thayer, please proceed when you're ready. Chief Judge, your honors, may it please the court. My name is Dylan Thayer and I am here on behalf of the Appellant, Sergeant First Class James F. Murphy. The question before this court today is whether the 2023 correction board reopened Sergeant First Class Murphy's application when it decided his application in 2023 again. And it clearly did. The district court erred when it found otherwise. In Sandra Court v. McGaugh, this court stated that an agency decision which either clearly states or otherwise indicates that it has reopened consideration of a previously determined issue renders that decision a new decision which may be reviewed under the usual judicial standards. The district court analyzed the question of whether the 2023 correction board had reopened Sergeant First Class Murphy's application under the four-part framework of PV v. United States. But the district court erred when it held that none of the four PV factors were met in Sergeant Murphy's case. In fact, there were three distinct factors which together demonstrate that the 2023 correction board reopened Sergeant First Class Murphy's case. First, Sergeant First Class Murphy failed to comply with the correction board's deadlines, yet the correction board reviewed his case anyway. In PV, the court said that the only way to make sense of a correction board's waiving of the deadlines and reconsidering the case was to find that it was a reopening. Second, Sergeant First Class... Can I say something on that one? I think language is to this effect in some of the decisions, but it would create some concerning incentives if an agency couldn't engage with the merits even though a timing issue had come and gone, if the consequence of that would be that it would necessarily be treated as a reopening. I... You're right, Your Honor. I think that there is... And that's why the PV court considered this as a four-part test. The timing is not dispositive. It's one of the factors. It's one of the factors that the court looked to when determining that the agency or the correction board had reopened the decision. I think there's some other different equities here in the correction board context because the correction board is required to review any application which comes before it which presents either new evidence or new arguments. That's the requirement under 10 U.S.C. 1552, which gets to the second reason why Sergeant First Class Murphy satisfies the four-part PV test. He requested different relief in his 2021 application than he had in either his 2011 or his 2014 application. In his 2014 application, he merely requested that his DD Form 214 be corrected to reflect that he was separated for disability, whereas in his 2021 application, he requested full disability retirement or, in the alternative, referral to the DES to evaluate whether he was medically unfit in either 2002, 2007, or 2009. And that second factor gets to the third reason and the most important and arguably dispositive reason as to the correction board reopened Sergeant First Class Murphy's case, the advisory opinion. The board created an internal advisory opinion from the armed medical advisor. This was an advisory opinion to which Sergeant First Class Murphy was not permitted to respond. Had it originated outside the agency, he would have been permitted a response under 10 U.S.C. 1556. This advisory opinion was four pages long. It analyzed seven medical conditions that Sergeant First Class Murphy had presented to the board in exquisite detail, his right shoulder tendinitis, his asthma, which were the basis for his two permanent P3 profiles. Mr. Thayer, even if we were to agree with you on timeliness, what are the best arguments that the board's decision was arbitrary and capricious under our very highly deferential standard? Sure. So, at the outset, Your Honor, I think that that issue is not properly before this court, but let's assume that it were. I think there's two excellent arguments as to why the board's decision is arbitrary and capricious. First, under Army Regulation 40-501, if an applicant or, excuse me, if a service member has a P3 profile, he's required to be referred to the DES. The Secretary argues in his brief that that's not a requirement, but this court in Sissel v. Wormuth was looking at the interpretation of Army Regulation 635-40. In Watson v. United States, the Court for Federal Claims directly considered this question under Army Regulation 40-501 and found that once there's a P3 profile in place, referral to the DES is required. Mr. Thayer, our precedence, unfortunately, for your client, it's not just we don't just consider whether the board erred or was unreasonable, but the statutory standard is that the Secretary, you know, can correct when he considers it necessary, which leaves a tremendous amount of discretion. So, we have to review whether that discretion was unreasonable. Of course, Your Honor. That's absolutely the standard, and reviewing that same issue in the context of Army Federal Claims found that it was arbitrary and capricious for the Correction Board to fail to refer an applicant to the DES when he satisfied the medical standards to have a P3 profile. I think the second reason why it would be arbitrary and capricious for the—why the Correction Board's decision was arbitrary and capricious is because even assuming that Sergeant First Class Murphy met medical retention standards, which the Secretary argues in his brief that he did, the only reason he was able to do that was through his persistent use of opioids and other prescription drugs. And under the relevant language in Army Regulation 40-51, it cannot be that he is, quote, reasonably performing the duties of his position if he's needing to use opioids and other prescription drugs for years on end simply to be functional in an Army context. The board did even consider that argument. Under this court's precedent in Frizzell v. Slater, the court is required—or excuse me, the board is required to consider all non-frivolous arguments which are brought before it by an applicant. That was a non-frivolous argument. It is completely non-frivolous for Sergeant First Class Murphy to state that he was only able to fulfill the duties of his MOS in the Army because he was using opioids and other prescription drugs. The board was required to that argument. They didn't consider it. Even the advisory opinion didn't consider it. The advisory opinion, which is a serious, substantive analysis of the issues in this case and thus satisfies the requirements for reopening. Okay. On the internal opinion, so in Sendra, there was a re-inspection of the facility, right? That's correct, Your Honor. So why wouldn't that indicate that this—that was external, actually. I mean, you're looking at something outside. It was external in the sense that you were looking outside, but the inspection was requested by Sendra, Your Honor. So that's number one. That's a distinguishing factor that's not present here. Sergeant First Class Murphy did not request the opinion. The agency did it of its own accord. Sendra requested the inspection. Why would that matter? Well, I think it matters if the agency decides to do something of its own accord versus if an applicant asks to do it. I think it may not be dispositive, but I think it's a factor. But I still don't understand why that matters. Because even if the applicant asks, the point is that the agency did it. So whether the agency does it of its own volition or not, if the question is whether the proceeding has been reopened, it seems to me that—and I totally understand why you would make the argument. It seems to me that the major party argument is that, look, this was a substantive re-engagement and it was a really significant substantive re-engagement because it even got an internal opinion to augment the thinking on it. But a similar dynamic occurred in Sendra, and yet the conclusion was still reached that there was not a reopening. Well, I think it's not similar, Your Honor, respectfully. And I think that not only the agency's own decision to—not only is there a distinguishing factor in terms of whether the applicant solicited it, but in Sendra, those inspections weren't before this court. The court was only reviewing affidavits which Sendra submitted. That was the decision which Sendra said should have triggered the reopening. So the inspections—the court discussed those inspections, but it wasn't actually reviewing the inspections. It was reviewing the affidavits, self-serving affidavits, which Sendra submitted, which basically said, hey, we're complying with the law because we say so. Had those inspections been under review by this court, I think it's very possible that the Sendra court might have reached a different outcome. Make sure my colleagues don't have additional questions for you. All right. Thank you. We'll give a little time for rebuttal. Mr. Tracy. Thank you, Chief Judge, and may it please the Court, Brian Tracy, on behalf of the Secretary of the Army. Your Honor, applicant is trying to turn an out-of-time reconsideration denial into a brand-new final agency decision, but the Board expressly treated his 2021 filing as a reconsideration of that 2015 decision. The Board incorporated earlier rulings and refused to amend the 2015 result. Under this Court's consistent doctrine, that is not a reopening. The suit is untimely, and the judgment should be affirmed. Moreover, even if the Court concludes otherwise, the merits support the Board's conclusion. Admission to the disability evaluation system is fundamentally a performance-based assessment, and the final evaluation was that his medical conditions, quote, did not prevent him from being an effective course of action. I'd like to kind of walk through the various decisions that the Court has made in Sendera, in Pierre, in Fort Sumter, in Palacios. There is sort of a multi-step analysis. The first is what the Supreme Court said in Board of Locomotive Engineers, which is that formal action, not the discussion behind the formal action, controls. We are not trying to look to whether, in fact, the agency reopened the opinion. We are trying to determine whether the agency itself intended to reopen. So why under Locomotive Engineers isn't this formally a reconsideration? The Board says that it is granting reconsideration, right? And so under, I mean, I'm not sure the PV factors are even relevant here. I would agree, Your Honor. I don't know. In this case, the Board granted reconsideration exactly. And that would make it timely. No, Your Honor. So the reconsideration itself does not make it timely. What makes it timely is whether the Board reopened the case. So the case is distinguished pretty clearly between a reconsideration and a reopening. A Board may reconsider its decision and ultimately reaffirm that decision. The cases are pretty clear that a reevaluation of the merits, essentially to ensure that that prior decision was correct, was properly decided, does not reopen it and does not toll the statute of limitations. If the agency grants reconsideration, but then stays with its original determination. Yes, Your Honor. Does the time start to run as of the original decision or as of the reconsideration? No, Your Honor. It would start to run as of the original decision. Yes, Your Honor. So because of that, we look at what the agency stated. So the intention, we have to look at whether reopening only exists if the agency's, quote, intention to reinitiate a reopening is clear from the administrative record. And for a peer, that intention has to be crystal clear. And who carries the burden under a peer? Who carries the burden of showing that a reopening has occurred, whether that intent is crystal clear? It is plaintiff. Mr. Tracy, even if we were to find that this were timely, why should this court reach the arbitrary and capricious issue rather than remand the district court? Your Honor, because I think the record is quite clear that under the deferential standard applied to the administrative correction boards, that the appellant's case is concluded and that the board has reached a correction. So we could affirm on those alternative grounds? Yes, Your Honor. Okay. If the board has no further questions, I'm sure my colleagues don't have any additional questions. Okay. Thank you, counsel. Mr. Thayer, we'll give you two minutes for a rebuttal. Yes, Your Honor. So my friend on the other side discussed several cases that this court has used to evaluate reconsideration versus reopening. With the exception of Palacios, none of those cases were in a BCMR context. So they're not very helpful in evaluating the issue before this court. Palacios and Franklin frankly didn't really consider this issue in depth. It simply stated that the boilerplate denial, that's a quote, boilerplate denial of the correction board in that case was not sufficient to find that the correction board had reopened the case. PV is much more probative, Your Honor, because PV discusses factors in exquisite detail as to why a court should find that the correction board has reopened the case. Here we do have a reopening. What the agency states in an informal proceeding is not dispositive. My friend on the other side is correct that it called it a denial of reconsideration, but there's actually no mechanism by which to request a reopening under the regulations, under the Army's regulations and under 10 U.S.C. 1552, the statute, an applicant can't request a reopening. He can only request a reconsideration. So my client did what he had to do. It's up to us to evaluate whether this was a reopening, and it was a reopening because he failed to comply with the correction board's timelines. He requested different relief, and most important of all, the board itself analyzed this in a four-page advisory opinion and adopted the advisory opinion. The advisory opinion was not extant for his prior applications. Finally, the secretary discussed about burdens and how it's our burden to show that the case was reopened, and that's true, but it's the secretary's burden to show that the issue in the district court as to whether the decision was arbitrary and capricious can, in fact, be reviewed by this court, and the secretary has provided no reason he hasn't met that burden. Thank you. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan; Henderson; Rao